MEADOWS, WILLIAM A., Jr., Associate Judge.
This is an interlocutory appeal from an order enjoining the appellant, a dealer for petroleum products and accessories, from handling any products not furnished by the appellee, a supplier of Standard Oil products. Appellant was the defendant below in a suit for declaratory decree and other relief filed by the plaintiff for a rescission of a business property lease on the ground that the appellant had breached an alleged agreement prohibiting it from selling competitive products. A review of the dealings between these parties, which led to their disagreement in understanding the issues presented by this appeal, is helpful in understanding the questions presented by this appeal.
On March 1, 1955, these parties entered into a dealership agreement under which the appellee was to furnish gasoline, lubricating oils, grease, accessories, and kero *365 sene to one of the appellant’s retail outlets located at 5600 Biscayne Boulevard, Miami, Florida, for a period of ten years.
On August 15, 1956, the parties entered into a business property lease for premises •owned by the appellee located at 301 Giral-da Avenue in Coral Gables, Florida. This lease was to run for five years and provided that the property was to be used to sell petroleum products, tires, batteries, and accessories. Subsequently, on August 3, 1959, the appellee, upon request of the appellant through its president, verbally agreed to release appellant from its obligations under the 1955 agreement, relating to the Biscayne Boulevard store. Subsequent to this verbal agreement, the following letters were •exchanged.
“August 4th, 1959
"Mr. Hugh Emerson
■“President
■“Aeroland Oil Company
“2540 N. W. 74th St.
■“Miami, Florida
“Dear Hugh:
“This is to confirm our conversation of yesterday, at which time you were gracious enough to release me from my agreement with Aeroland Oil Company at no penalty.
“It was decided at that time that I would pay for labor costs incurred by you when installing equipment at my new branch, General Tire of North Miami, 700 N. E. 167th St.
“We further decided that I would ■continue to lease from you my Coral ■Gables branch carrying Standard Oil products exclusively until the expiration of my present lease. As you know, I have an opportunity to represent a ■major oil company under a broad jobber contract.
“In view of this I wish to thank you for your past courtesies and complete •co-operation.
“As we said yesterday, this is not the end of our relationship Hugh, but only a change in form. It is my hope that we may have an even closer personal relationship in the future.
“I would appreciate your cancelled form of our agreement at your convenience. I hope you take us as a day to day customer until such time as our arrangements with our new supplier are completed.
“Your counsel and advice will always be of great value to me. “Sincerely,
“Michael O’Neil
“President of
“THE GENERAL TIRE OF MIAMI, INC.”
“MO :fh
* * * * * *
“August 11, 1959
“Mr. Michael O’Neil, President
“General Tire of Miami, Inc.
“5600 Biscayne Blvd.
“Miami, Florida
“Dear Mike:
“This will acknowledge receipt of your letter of August 4, 1959, which is in reference to arrangements made by you to obtain your supply of petroleum products from another supplier.
“It is agreeable with me for you to continue to operate our property at 301 Giralda Avenue, Coral Gables, Florida, provided you handle exclusively Standard Oil Company products for the duration of the present lease agreement.
“With reference to your request for the cancellation of the contract covering 5600 Biscayne Blvd. location, I shall be glad to have a termination agreement prepared for our joint execution as soon as you have formally notified me that we are to discontinue supplying you with your petroleum requirements at the above location and your other two locations at 1801 Alton *366 Road, Miami Beach and 700 N.E. 167th St., North Miami, at which time we will reclaim the advertising signs loaned and installed, as well as pump globes and inserts.
******
“Sincerely yours,
“Hugh P. Emerson
“President”
After considering the testimony and evidence, the chancellor found an insufficient basis for granting a declaratory decree, and that the appellee-plaintiff was not entitled to a cancellation of the subject lease. The chancellor found further that the correspondence of August 4 and 11 constituted a new agreement between the parties, and that the appellant-defendant’s sale of products other than Standard Oil products at the 301 Giralda Avenue store was in direct conflict with this new agreement. As a result, the court enjoined appellant from handling such-competitive products at that location for the ■ remaining term of their lease. It is from this decision that defendant appeals.
The first and second points raised by appellant are related and are considered together. First, appellant says that the chancellor erred in finding that the letters exchanged in August, 1959, constituted a new agreement, contending that the word “exclusive” used in the letters did not mean that appellant is prohibited from carrying competitive items, so long as a major part, ninety per cent, of its sales are Standard Oil products.
Second, it is contended that, if a new agreement did exist prohibiting the sale of any other products, the lower court erred in finding that the agreement prohibited the sale of General Tires. (This question was raised by defendant’s petition to modify, which petition was denied.)
The chancellor was correct in construing the letters as a new agreement under which the appellee-plaintiff gave up its right to sell its products to appellant-defendant’s Biscayne Boulevard store in return for appellant’s agreeing to sell only Standard Oil Products at the Coral Gables location. We believe, however, that the testimony of the parties, explaining the meaning of the term “exclusive”, shows clearly that General Tires were not to be included in the restriction placed on appellant by this “exclusive” agreement.
Mr. Hugh Emerson, president of the ap-pellee company, testified on page 19 of the transcript as follows:
“Q. You agreed, did you not, with Mr. O’Neil that he would buy from you and use exclusively in the Coral Gables store, Standard Oil Products? A. That’s right.
“Q. And when you say 'exclusive’, what do you mean by that? A. Do. you want me to define the word ‘exclusive’ ?
“Q. As it is used in the trade. A. There would be no competitive products on display at that location at any time.
“Q. Of any kind? A. Of any kind, except General Tire. He could carry those of General Tire, that was generally understood.
“Q. You didn’t say that in the written agreement? A. No.
“Q. That was understood between you? A. That is right.
“Q. I would like to ask this question. Do you have any other exclusive agreement with any other station operator? A. Yes, sir.
“Q. What do you mean when you speak of ‘exclusive’ with respect to those people? A. As I just repeated.
“Q. Isn’t it a matter of fact that in. the trade you and everyone else when using the word ‘exclusive’ do not mean to the complete exclusion of all other products? A. Not with us.”
*367 These instruments are clear and unambiguous, except for the word “exclusively.” The testimony reveals that the parties intended that the use of this word was not meant to prevent the appellant from selling General Tires. See cases cited at 7 Fla. Jur., Contracts Sect. 88. The injunction should be modified to allow appellant to sell General Tires at its 301 Giralda Avenue store.
The question presented by the third point of appellant is whether or not the contract was in restraint of trade and contrary to public policy. The facts of this case show dearly that the exclusive agreement is to be in effect in only one store, and that the agreement does not limit production, or control prices. We think that the agreement is valid and is not in restraint of trade. See McQuaig v. Seaboard Oil Company, 96 Fla. 275, 118 So. 424.
Accordingly, the injunctive order is modified by striking the word “tires” from the paragraph before the last thereof and the addition of the following sentence to that paragraph: “The defendant is not enjoined from handling General Tires and tubes”, and as modified the order is affirmed.
Modified and affirmed.